UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MORGAN POWELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>vs.<br><br>IDACORP, INC., et al.,<br><br>                    Defendants. | Case No. CIV 04-249–S-EJL<br><br>MEMORANDUM ORDER |
| AND CONSOLIDATED ACTION. | Case No. 04-322–S-EJL |

      Before the Court is Defendants' motion to dismiss. On February 26, 2007, Chief Magistrate Judge Mikel H. Williams held a hearing on the motion and thereafter issued a report and recommendation, recommending that the motion to dismiss be granted. (Dkt. No. 108). Any party may challenge a Magistrate Judge's proposed recommendation regarding a dispositive motion by filing written objections within ten days after being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the Magistrate Judge. Id.; see also Fed. R. Civ. P. 72(b). In contrast, the Court reviews a Magistrate Judge's nondispositive order under a clearly erroneous or contrary to law standard. Fed. R. Civ. P. 72(a); 28 U.S.C. 636(b)(1)(A).

      In this case, Plaintiff has filed objections contending the Chief Magistrate Judge failed to

MEMORANDUM ORDER - Page 1

properly apply the law and erred in concluding that the complaint failed to allege loss causation. The Defendants filed a response to the objections asserting the Chief Magistrate Judge's conclusions are correct but also that the Court should find that the alternative reasons for dismissal raised in the initial motion also provide grounds for granting the motion to dismiss. Defendants' response to the objections further argue that the amended complaint has alleged no new facts and that the allegations/conclusions made in the complaint are unsupported by any facts.

## FACTUAL BACKGROUND

The lead Plaintiff has brought this action on behalf of persons who acquired publicly issued securities of Idacorp, Inc. between February 1, 2002 and June 4, 2002 ("Class Period") against Defendants Idacorp, Inc. ("Idacorp"), Jon H. Miller, Jan B. Packwood, J. Lamont Keen, and Darrel T. Anderson. The complaint alleges federal securities law violations raising claims pursuant to § 10(b) and § 20(a) of the 1934 Act and Rule 10b-5. The scheme and fraudulent activity alleged in the complaint involved Idacorp's use of its subsidiaries, Idaho Power Company ("IPC") and Idacorp Energy ("IE"), in improper energy trading and hedging activities and financial manipulations before and during the Class Period. Plaintiff alleges the Defendants engaged in financial transactions with non-creditworthy entities and entered into improper contracts which resulted in falsely inflated values of Idacorp assets and manipulation of earnings as reflected in misleading financial forecasts upon which, Plaintiff alleges, he relied in purchasing shares at artificially inflated prices which later lost value when the truth about Idacorp became known, thereby causing Plaintiff's losses.

This Court adopted the previous report and recommendation of Chief Magistrate Judge Williams granting the motion to dismiss based on the Plaintiff's failure to plead loss causation. The Plaintiff was allowed to amend his complaint to cure the deficiency. Thereafter, Defendants filed

their second motion to dismiss the Plaintiff's amended complaint and the Chief Magistrate Judge issued the report and recommendation currently before the Court. Having considered the record, the objections, and the report and recommendation, the Court issues the following order.

## STANDARD OF LAW

On this motion the Defendants ask that the complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See United States v. Howell, 318 F.2d 162, 166 (9th Cir. 1963).

**DISCUSSION**

Plaintiff maintains the amended complaint properly alleges loss causation based on the same theory of loss causation as was made in the original complaint: Idacorp used its subsidiaries, IPC and IE, to engage in improper energy trading and hedging activities and financial manipulations before and during the Class Period for the purpose of artificially inflating Idacorp's earnings and stock price and when the true financial condition of Idacorp was later revealed the stock price collapsed thereby causing loss to investors. (Dkt. No. 109, p. 2). The amended complaint alleges that the company's April, 2002 and June, 2002 statements revealed information about Idacorp's true financial condition and the "impact" the Defendants' prior misrepresentations had on the company's worth which caused the drop in price. (Dkt. No. 92, p. 5). The Plaintiff asserts this satisfies the loss causation requirements in Daou because it "began to reveal figures showing the company's true financial condition." (Dkt. No. 109, p. 5). Defendants argue the amended complaint fails to allege any new facts which meet the loss causation requirement and agrees with the Chief Magistrate Judge's determination that "the truth about the alleged misrepresentation...[must] make its way into the marketplace," which has not been alleged in this case. (Dkt. No. 111, pp. 2, 7).

I.      Pleading Requirement:

Plaintiff argues the heighten pleading requirements for securities cases does not apply to the loss causation element; asserting that only notice pleading is required under Dura. Plaintiff is correct. See Broudo v. Dura Pharmaceuticals, 544 U.S. 336, 346-47 (2005). What is required for a plaintiff to allege loss causation is that the share price "fell significantly after the truth became known" about the material misstatements or omissions. Dura, 544 U.S. at 347 (concluding that the complaint must provide defendants with notice of what that relevant economic loss might be and

MEMORANDUM ORDER - Page 4

what the causal connection might be between the loss and the misrepresentation).

II.     Loss Causation:

    A.     Application of the Law to the Amended Complaint:

Plaintiff objects to the Chief Magistrate Judge's application of the facts of this case to the applicable law. Defendants maintain that the amended complaint fails to properly allege loss causation and that the allegations that are made are unsupported.

The amended complaint contains new language which more clearly describes Plaintiff's theory of loss causation but continues to alleges that the misrepresentations were undisclosed; arguing that the Defendants' statements during the class period were "partial disclosures" of the "impact" the Defendants' misconduct had on the company. (Dkt. No. 92, ¶¶ 8-9) (stating the April and June 2002 forecast reductions were "partial disclosures of Idacorp's actual reliance on misrepresentations and manipulative transactions in order to inflate its financial results, forecasts, and stock price."); see also (Dkt. No. 92, ¶¶ 34, 55, 56, 59). In sum, the amended complaint alleges:

> Plaintiff and other class members suffered losses when defendants reduced Idacorp's financial forecasts on April 12, 2002 and June 4, 2002, which resulted in sharp declines in Idacorp's stock price. The reductions in Idacorp's stock price revealed the impact of defendants' misrepresentations, manipulative transactions and improper financial adjustments and the impact of defendants' inability to continue to engage in such misconduct in the future.

(Dkt. No. 92, ¶¶ 92-96). The alleged "manipulative scheme" was further revealed following the Class Period when Defendants admitted their conduct to the FERC and entered into the settlement agreement. (Dkt. No. 92, ¶¶ 59, 74, 76). Plaintiff argues these admissions to the FERC provided

MEMORANDUM ORDER - Page 5

the details of how the Defendants' defrauded investors but that the impact of the fraud had already been revealed, digested, and responded to by the market when the April and June 2002 earnings forecasts were issued.

The Supreme Court held in Dura that merely alleging loss as a result of artificially inflated prices is insufficient to plead the loss was caused by a securities violation. A plaintiff must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." Broudo v. Dura Pharmaceuticals, 544 U.S. 336 (2005) (concluding that the complaint must provide defendants with notice of what that relevant economic loss might be and what the causal connection might be between the loss and the misrepresentation). Ultimately, the Supreme Court found that the law requires "that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." Id. Subsequently, the Ninth Circuit issued its decision in Daou which concluded that the complaint's allegations that the drop in stock price was causally related to the financial misstatements because the price of stock fell precipitously following the company's disclosure of its true financial health. In re Daou Systems, Inc., Securities Litigation, 411 F.3d 1006 (9th Cir. 2005).

Having reviewed the amended complaint, this Court concludes that the amended complaint has failed to cure the pleading deficiencies for loss causation as it fails to plead a causal connection between the alleged losses and the material misrepresentations. The amended complaint now includes allegations that the Defendants' statements during the class period were "partial disclosures" revealing the "impact" of the Defendants' misconduct to which the market reacted resulting in losses to the Plaintiff. This theory runs head-long into the same problem the initial

complaint presented; putting the cart before the horse by arguing that the "impact" of the misconduct caused the losses before the misconduct was known. Even if the scheme was beginning to "unravel," the fact that the statements, forecasts, and earnings guidance issued by the Defendants during the Class Period continued to conceal the misconduct, as Plaintiff alleges, makes it impossible for the misconduct to have caused the market's reaction lowering the price because the truth of the misrepresentations was still unknown to the market. Assuming Plaintiff's allegations in the complaint are true, the 2002 statements relied upon by Plaintiff do not allege loss causation because, as the complaint itself states, the truth regarding the alleged misstatements was still being concealed by the Defendants. Because the misstatements remained concealed from the public, as the complaint alleges, the drop in stock price could not have been caused by the market's reaction to the misconduct.

      B.     <u>Distinguishing Daou Decision</u>:

Plaintiff contends the Chief Magistrate Judge improperly distinguished the <u>Daou</u> case on the basis that the Defendant in <u>Daou</u> admitted their fraud. <u>See</u> <u>In re Daou Systems, Inc., Securities Litigation</u>, 411 F.3d 1006 (9th Cir. 2005). Plaintiff argues there was no admission in <u>Daou</u> nor is one required for loss causation; maintaining that the allegations in this case regarding the forecast reductions are similar to the revelations accepted in <u>Daou</u> which requires only that the disclosures "began to reveal figures showing the company's true financial condition." (Dkt. No. 88, p. 7) (quoting <u>Daou</u>, 411 F.3d at 1026). Defendants disagree, arguing the company's statement in <u>Daou</u> revealed the company's prior misconduct whereas the alleged misconduct in this case was not revealed until well after the Class Period had ended. (Dkt. No. 89, p. 5). While generally revelations beginning to show the "true financial condition" of a company are sufficient under <u>Daou</u>,

the Court agrees with the Magistrate Judge that the facts here are different.

In <u>Daou</u>, the Ninth Circuit determined loss causation had been pled where the complaint alleged that the losses were a result of the company's August 1998 disclosure of its true financial condition which revealed the company's misconduct. <u>Daou</u>, 411 F.3d at 1026. The fact that prior to the August 1998 disclosure the company continued to conceal the misconduct is important to the decision as evidenced by the Ninth Circuit's recognition that prior to the August 1998 revelation "the defendants failed to disclose the actual figures to analysts to conceal the fact that Daou's operating earnings and margins were deteriorating as a result of the [misconduct]." <u>Id.</u> (concluding that because the complaint did not allege any revelations of the company's true financial health prior to August of 1998 that any losses suffered prior to August 1998 "cannot be considered causally related.").

Here, the revelations pointed to in the complaint did not reveal the "true financial condition" of Idacorp because, as stated in the complaint, the April and June 2002 forecast reductions "partially revealed the impact" of the misconduct but that the Defendants continued to conceal the "improper and manipulative transactions." (Dkt. No. 92, ¶ 59). Even if the forecast reductions were "partial revelations" of the "impact" of the Defendants' misconduct on the company, the Court finds that loss causation has not been pled because the amended complaint still alleges that the Defendants' continued to conceal the misconduct and, therefore, any market reaction was not caused by knowledge of the improper activity. The Chief Magistrate Judge's conclusion is consistent with this determination as it turns on when the alleged misconduct became "known to the market," thereby causing losses to investors. The Chief Magistrate Judge determined, as this Court has, that because the misrepresentations were not made known to the marketplace until after the Class Period, the

decline in stock price has not been causally linked to the improper activities of the Defendant.

    C.    Overtron Contract:

The Defendants argue the Overtron contract problems fail to support the Plaintiff's claim for loss causation because the market was never advised that the Overtron contract impacted the companies' earnings. Plaintiff argues the lack of response by the market to the pre-class information regarding Idacorp's involvement with un-creditworthy counterparties like Overtron is explained by the fact that the market had not yet digested the impact of these activities on Idacorp. In contrast, the subsequent strong market response to the April and June 2002 forecasts are, Plaintiff argues, a clear indication that Idacorp's true financial condition was being revealed to the market.

Having reviewed the amended complaint, the Court finds that the facts regarding the Overtron contract, revealed prior to the Class Period, do not support loss causation. The Plaintiff's theory is that the losses were caused following the forecast reductions which began to reveal the truth about the Defendants' true financial health as a result of having engaged in risky relationships with many uncreditworthy customers. Plaintiff argues it was not until the forecast reductions that the market had digested the impact of the Defendants' improper conduct, such as the Overtron deal, and the market did not react until the forecasts were issued in 2002. The facts regarding the Overton contract, however, cut against Plaintiff's theory because it evidences the fact that the forecast reductions in April and June of 2002 did not reveal any new information that had not been previously disclosed to the public.[1] The Plaintiff's theory ignores the existence of other market factors and that the pleading requirement for loss causation exists, in part, to ensure that the losses alleged were caused by the misconduct and not other market factors. See Dura, 544 U.S. at 343-45.

---

[1] The facts of the Overton deal were made known before the Class Period. (Dkt. No. 68, Exhibit D).

MEMORANDUM ORDER - Page 9

Based on the facts alleged here, it is impossible to say that the price reduction on these particular days in the volatile energy market was caused by Defendants' misconduct because the misconduct was not yet known to the market. Because the amended complaint fails to allege facts which demonstrate the loss causation element, the motion to dismiss is granted.

III.    Leave to Amend:

The initial complaint in this action was filed on May 26, 2004 and later consolidated on August 31, 2004. (Dkt. Nos. 1, 26). A consolidated complaint was filed on October 29, 2004. (Dkt. No. 30). Following the first report and recommendation in this case, the Court allowed Plaintiff an opportunity to amend the complaint as to loss causation. After Plaintiff filed the amended complaint Defendants filed the motion to dismiss which the Court has considered in this order. (Dkt. Nos. 91, 92, 95).

The report and recommendation recommends denying the Plaintiff's request to again amend the complaint, concluding that any amendment would be futile. Based on the *de novo* review of the record, this Court agrees with recommendation of the Chief Magistrate Judge. Although Rule 15 provides that leave to amend "shall be freely given when justice so requires," such a request is not necessary where allowing another chance to amend the complaint would be futile. See Fed. R. Civ. P. 15(a); Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999) ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile. Additionally, the district court may consider the factor of undue delay.") (citation omitted). Accordingly, the Court will deny the second request to amend as being futile.

**ORDER**

Having conducted a *de novo* review of the objected to portions of the Report and Recommendation, the Court finds that Chief Magistrate Judge Williams' Report and Recommendation is well founded in the law and consistent with this Court's own view of the evidence in the record. Acting on the recommendation of Chief Magistrate Judge Williams, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that except to the extent it has been modified by the Court herein, the Report and Recommendation entered on March 6, 2007 (Dkt. No. 108) is should be and is hereby, **INCORPORATED** by reference and **ADOPTED** as modified by this order.

**THEREFORE IT HEREBY ORDERED** Defendants' Motion to Dismiss (Dkt. No. 95) is **GRANTED**. Plaintiff's motion to amend (Dkt. No. 100) is **DENIED**.

DATED: **May 21, 2007**

Honorable Edward J. Lodge
U. S. District Judge